UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. |
| v. | VIOLATION: |
| MACROMARK, INC. | 18 U.S.C. § 1349 (Conspiracy to Commit Mail and Wire Fraud) |

INFORMATION

The United States charges:

1. At all times relevant herein, MACROMARK, INC. ("MACROMARK"), together with others known and unknown to the United States, knowingly supplied lists of potential victims for use in fraudulent mass-mailing schemes. These potential victim lists were essential to fraudulent mass mailers, who could not perpetrate their schemes without such lists.

Defendant

2. MACROMARK, a New York corporation, maintained offices in New York from at least as early as February 2005 until 2011 and in Connecticut from 2011 through at least as late as September 2016. MACROMARK and its co-conspirators offered list brokerage services to clients engaged in mass-mailing fraud. MACROMARK and its co-conspirators assisted clients by obtaining lists of potential victims for its clients to buy, and by helping clients sell their lists of victims to other mailers.

COUNT ONE
(Conspiracy to Commit Mail and Wire Fraud)

3. Paragraphs 1 and 2 of this Information are incorporated by reference.

4. From in or about February 2005 through in or about September 2016, the exact dates being unknown to the United States, in the District of Connecticut and elsewhere, MACROMARK did unlawfully, knowingly, and willfully combine, conspire, confederate, and

agree with others known and unknown to the United States to commit mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

### The Object of the Conspiracy

5. The object of the conspiracy was for MACROMARK and its co-conspirators to enrich themselves by helping fraudulent mass mailers acquire lists of potential victims to defraud and by helping mass mailers sell lists of potential victims to be defrauded by others.

### The Manner and Means of the Conspiracy

6. MACROMARK and its co-conspirators acted as list brokers for fraudulent mass mailers. The mass mailers sent out (typically via United States Postal Service mail) fraudulent letters that appeared to be personalized to each recipient when, in actuality, the same letters were sent to thousands of consumers on the mailing lists that MACROMARK provided. Each letter was intended to mislead the consumer into believing they would receive a large amount of money, a valuable prize, or personalized psychic services upon payment of a fee to the mass mailers, who operated under false names. MACROMARK and its co-conspirators were paid a commission for brokering the sale of lists of potential victims to fraudulent mass mailers. MACROMARK and its co-conspirators obtained mailing lists for fraudulent mass-mailer clients, knowing those clients intended to defraud the consumers on those lists. MACROMARK and its co-conspirators also assisted fraudulent mass-mailer clients in earning income from lists of victims the clients had already defrauded by selling those lists to other fraudulent mass mailers.

7. MACROMARK and its co-conspirators knew the content and fraudulent character of their clients' letters because they routinely requested and received sample copies of them during list transactions. MACROMARK and its co-conspirators then kept those sample copies of fraudulent letters for reference at MACROMARK in both digital and paper form. In general, the most effective mailing lists for any particular fraudulent mass mailing were lists made up of victims of other mass-mailing campaigns that used similarly deceptive letters. MACROMARK

and its co-conspirators accordingly used the sample copies of client letters they received and maintained to make recommendations of particular mailing lists to fraudulent mass-mailer clients.

8. MACROMARK and its co-conspirators received warnings that clients' letters were fraudulent, and that victims of their fraudulent mass-mailing clients were vulnerable. For example, in or about February 2012, a list owner wrote to a MACROMARK executive: "Just yesterday a guy wrote to me about his [A]lzheimer wife believing she won. . . . . for all offers, including this one, where it really appears that the person is getting a check sent to them for lots of money and seemingly no qualifiers, I must say no."

9. MACROMARK and its co-conspirators also knew that certain of their clients were under scrutiny by law enforcement. For example, in or about December 2009, a MACROMARK executive circulated within the Company a news article about a client of the Company who had been arrested for sending letters to victims that requested a "processing fee" to claim a "sweepstakes prize." In or about December 2014, a MACROMARK executive discussed with a client that another major mass-mailer client who had regularly ordered mailing lists from the Company had been "stopped by the authorities." Similarly, in or about June 2015, a MACROMARK executive knew that the Company was warned by the Iowa Attorney General's Office that the Company's clients were deceiving elderly Iowans. After receiving these and other warnings, MACROMARK and its co-conspirators continued to provide mailing lists of victims to mass mailers they knew were engaged in fraud.

10. MACROMARK and its co-conspirators also helped fraudulent clients to manage disruption to their business caused by law enforcement action. For example, in or about December 2014, a MACROMARK executive offered his services to a fraudulent mass mailer whose prior list broker shut down to avoid federal law enforcement. Similarly, in or about June 2016, a MACROMARK executive sent a client a link to a newspaper article with the headline "Feds: Mail fraud schemes scam seniors," together with materials connecting the client's own letters to the subject of the newspaper article. Two months later, in or about August 2016, a MACROMARK

executive advised the client on how to restructure the client's company to make it easier to change names frequently and thereby evade law enforcement scrutiny.

11. MACROMARK and its co-conspirators also routinely exchanged interstate wires, including emails, with its co-conspirators and clients in furtherance of the scheme and conspiracy.

12. During the course of the conspiracy, MACROMARK knowingly furnished millions of potential victims to clients engaged in fraudulent mass-mailing campaigns.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

13. Upon conviction of conspiracy to commit mail and wire fraud alleged in Count 1 of this Information, MACROMARK shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 1349, and a sum of money equal to the total amount of proceeds obtained as a result of the offenses.

14. If any of the above described forfeitable property, as a result of any act or omission of MACROMARK, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of MACROMARK up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 981(a)(1), as incorporated by Title 28, United States Code, Section 2461(c), Title 21, United States Code, Section 853, and Rule 32.2(a), Federal Rules of Criminal Procedure.

FOR THE UNITED STATES OF AMERICA

/s/ Leonard C. Boyle
LEONARD C. BOYLE
FIRST ASSISTANT U.S. ATTORNEY
DISTRICT OF CONNECTICUT

/s/ Heather L. Cherry
HEATHER L. CHERRY
ASSISTANT UNITED STATES ATTORNEY

GUSTAV W. EYLER
DIRECTOR
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

/s/ Alistair F. Reader
ALISTAIR F. A. READER
EHREN REYNOLDS
TRIAL ATTORNEYS

All in accordance with Title 18, United States Code, Section 981(a)(1), as incorporated by Title 28, United States Code, Section 2461(c), Title 21, United States Code, Section 853, and Rule 32.2(a), Federal Rules of Criminal Procedure.

FOR THE UNITED STATES OF AMERICA

LEONARD C. BOYLE
FIRST ASSISTANT U.S. ATTORNEY
DISTRICT OF CONNECTICUT

GUSTAV W. EYLER
DIRECTOR
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

HEATHER L. CHERRY
ASSISTANT UNITED STATES ATTORNEY

ALISTAIR F. A. READER
EHREN REYNOLDS
TRIAL ATTORNEYS